IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ROBERT WINGFIELD                                                                                          PLAINTIFF

vs.                                              No. 07-2009

BERKSHIRE HATHAWAY, INC.,
CLAYTON HOMES, INC., and
ERIC DUNDEE                                                                                            DEFENDANTS

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Defendants Berkshire Hathaway Inc. ("Berkshire Hathaway") and Clayton Homes, Inc. ("Clayton Homes"), appearing specially for the limited purpose of challenging personal jurisdiction, have moved the Court to dismiss Plaintiff's claims against them for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Further, Defendant Eric Dundee and alternatively, Berkshire Hathaway and Clayton Homes, have moved the Court to dismiss Plaintiff's claims against them for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff is not an "eligible employee" under the Family and Medical Leave Act.

**I. Statement of Facts**

Plaintiff Robert Wingfield filed his Original Complaint against Defendants Berkshire Hathaway, Clayton Homes, and Eric Dundee on February 8, 2007. Plaintiff alleges violations of federal law, namely the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. See Orig. Compl. at ¶ 3. His claims arise out of his employment as "a Salesman of mobile homes" in Fort Smith, Arkansas, at a facility he alleges was operated by Berkshire Hathaway and Clayton

Homes and where Mr. Dundee was employed.  <u>See</u> <u>id.</u> at ¶ 7.  Plaintiff complains that he was terminated from his employment on or about February 9, 2005, as a result of his having taken time off from work to care for his ailing mother from November 2004 until February 8, 2005.  <u>See</u> <u>id.</u> at ¶¶ 9, 15.

Plaintiff attempted to serve his Complaint on Berkshire Hathaway at its Omaha, Nebraska, headquarters on June 7, 2007, by personal service upon the company's registered agent for service of process.  Also on June 7, Plaintiff attempted to serve Clayton Homes in Maryville, Tennessee, by personal service upon the company's registered agent for service of process.

Berkshire Hathaway is a holding company owning subsidiaries that engage in a number of business activities.  Declaration of Jo Ellen Rieck, at ¶ 4, attached to Motion as Exhibit A ("Rieck Decl.").  It is a Delaware corporation with its principal place of business in Omaha, Nebraska.  <u>Id.</u> at ¶ 3.  Berkshire Hathaway is not registered to do business in Arkansas, does not have a registered agent in Arkansas, does not conduct any business in Arkansas, and does not pay taxes in Arkansas.  <u>Id.</u> at ¶ 5.  It does not maintain an office here and has no employees working here.  <u>Id.</u>  Berkshire Hathaway does not own or lease property here; does not sell goods or services here; and does not manufacture products here.  <u>Id.</u> at ¶¶ 6-7.

More specifically, neither Eric Dundee nor Robert Wingfield has been, at any time, an employee of Berkshire Hathaway.  <u>Id.</u> at ¶ 12.  Berkshire Hathaway does not conduct any business in Fort Smith, Arkansas, or within 75 driving miles of Fort Smith.  <u>Id.</u> at ¶ 13.

Clayton Homes is a Delaware corporation with its principal place of business in Wilmington, Delaware.  Declaration of John Kalec, at ¶ 3, attached to Motion as Exhibit B ("Kalec Decl.").  It is not registered to do business here, does not have a registered agent here,

and does not pay taxes here.  Id. at ¶¶ 4, 7.  Clayton Homes does not conduct business in Arkansas, does not sell goods or services in Arkansas, and does not manufacture anything in Arkansas.  Id.  Clayton Homes has not sold manufactured homes at wholesale or retail in Arkansas and has not maintained an office in Arkansas since at least 1998.  Id. at ¶ 5.  It has no employees, no tangible personal property, and no real property in Arkansas.  Id. at ¶¶ 6-7.

More specifically, Clayton Homes does not conduct any business in Fort Smith, Arkansas, or within 75 driving miles of Fort Smith.  Id. at ¶ 14.  Robert Wingfield was not employed by Clayton Homes, and Eric Dundee is not an employee of Clayton Homes.  Id. at ¶ 15.

Clayton Homes is an indirectly wholly owned subsidiary of Berkshire Hathaway.  Rieck Decl. at ¶ 8; Kalec Decl. at ¶ 8.  Berkshire Hathaway and Clayton Homes are separate legal entities operating under separate boards of directors with separate employees, assets, and principal places of business.  Rieck Decl. at ¶ 9; Kalec Decl. at ¶ 9.  Clayton Homes has its own management that manages its day-to-day operations separate from Berkshire Hathaway.  Rieck Decl. at ¶ 10; Kalec Decl. at ¶ 10.

CMH Homes, Inc. ("CMH Homes"), a Tennessee corporation with its principal place of business in Maryville, Tennessee, is an indirect wholly-owned subsidiary of Clayton Homes.  Kalec Decl. at ¶ 11; Declaration of Bryan Hayes, at ¶¶ 3-4, attached to Motion as Exhibit C ("Hayes Decl.").  Clayton Homes and CMH Homes are separate legal entities operating under separate boards of directors with separate employees, assets, and principal places of business.  Kalec Decl. at ¶ 12; Hayes Decl. at ¶ 5.  Clayton Homes does not exercise any day-to-day control over CMH Homes.  Kalec Decl. at ¶ 13; Hayes Decl. at ¶ 6.

3

CMH Homes operates a manufactured home sales center in Fort Smith, Arkansas. Hayes Decl. at ¶ 7. Eric Dundee is a manager at the Fort Smith location, and Robert Wingfield was employed there until early 2005. Id. at ¶¶ 8-9. From November 2004 through February 9, 2005, CMH Homes had eight employees on the payroll at its Fort Smith location. Id. at ¶ 10.

The only CMH Homes location within 75 driving miles of Fort Smith is a sales center in Lowell, Arkansas. Id. at ¶ 11. From November 2004 through February 9, 2005, CMH Homes had six employees on the payroll at its Lowell location. Id. at ¶ 12. Based upon these facts, dismissal of Plaintiff's Complaint is warranted pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

## II. **The Court lacks personal jurisdiction over Berkshire Hathaway and Clayton Homes.**

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for a motion to dismiss for lack of jurisdiction over the person.[1] Upon such a motion, the Court examines "whether the nonmoving party has established a prima facie case of personal jurisdiction." Stanton v. St. Jude Medical, Inc., 340 F.3d 690, 693 (8th Cir. 2003). In other words, "[t]he party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th 2003).

"The analysis of personal jurisdiction proceeds on two levels. First, we examine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute. Second, we address whether the exercise of personal jurisdiction comports with the requirements of due

---

[1] Insufficiency of service of process is a related issue because service of process outside Arkansas is proper only when the exercise of jurisdiction is permitted by the long-arm statute. Ark. Code Ann. § 16-4-101(C). As a result, if there is no personal jurisdiction, service of process was also defective and dismissal is also proper under Rule 12(b)(5).

4

process." Stanton, 340 F.3d at 693 (citations omitted).  Arkansas's long-arm statute provides that "[t]he courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark. Code Ann. § 16-4-101(B). As a result, the inquiry is limited to whether the Court's exercise of jurisdiction over Berkshire Hathaway is consistent with due process.  Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992).  Because this is a federal question case and a federally created right is at issue, due process is examined in light of the Fifth Amendment rather than the Fourteenth Amendment. Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1389 n.2 (8th Cir. 1991).

1. *Berkshire Hathaway and Clayton Homes lack minimum contacts with the State of Arkansas.*

Before a nonresident can be subjected to jurisdiction, the Supreme Court's "minimum contacts" standard must be satisfied. Id. at 1389.

> Due process requires that there be sufficient "minimum contacts" between the nonresident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 [ ] (1980). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum state are such that he [or she] should reasonably anticipate being haled into court there." Id. at 297 [ ]. In assessing the defendant's reasonable anticipation, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 [ ] (1958). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction *694 solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 [ ] (1985) (citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Id.

Stanton, 340 F.3d at 693-94 (emphasis omitted).  In analyzing the constitutional requirements needed for personal jurisdiction, the Eighth Circuit applies a five-factor test.  Stanton, 340 F.3d at 694.  The factors are:

5

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. The first three factors are of primary importance, and the last two are secondary factors.

Id. (quoting Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226 (8th Cir. 1987)) (citations and internal quotations omitted).

Berkshire Hathaway has *no* contacts with the State of Arkansas. It is a Delaware corporation with its principal place of business in Nebraska. It is not registered to do business here, does not have a registered agent here, does not conduct any business here, and does not pay taxes here. It does not maintain an office in Arkansas, has no employees in Arkansas, and does not own or lease property in Arkansas. It does not sell goods or services here and does not manufacture products here.

Likewise, Clayton Homes has *no* contacts with the State of Arkansas. It is a Delaware corporation with its principal place of business in Delaware. It is not registered to do business here, does not have a registered agent here, and does not pay taxes here. It does not conduct business in Arkansas, does not sell goods or services in Arkansas, and does not manufacture anything in Arkansas. It has not sold manufactured homes at wholesale or retail in Arkansas and has not maintained an office in Arkansas since at least 1998. It has no employees, no tangible personal property, and no real property in Arkansas.

Given that neither Berkshire Hathaway nor Clayton Homes has *any* contacts with the State of Arkansas, there can be no analysis of the nature, quality and quantity of the contacts or of the relation between the contacts and the claims in this lawsuit. As a result, the three primary factors in the constitutional analysis indicate personal jurisdiction in Arkansas is not proper. Even the last two factors in the analysis weigh against a finding of personal jurisdiction because Plaintiff has simply sued the wrong corporations here.

Indeed, the Eighth Circuit has held that, where a corporation has "no direct contacts with Arkansas," the corporation is not subject to jurisdiction in the State. Epps, 327 F.3d at 650. There, a Delaware corporation with one corporate office in Houston, Texas, was sued in Arkansas. The corporation was not authorized to do business in Arkansas and did not have a place of business, mailing address, bank accounts, or other personal property in Arkansas. The Eighth Circuit said there was nothing to connect the corporation directly to Arkansas, and, as a result, there were no "minimum contacts." Id. Accordingly, Arkansas lacks minimum contacts with either Berkshire Hathaway or Clayton Homes.

2. *The corporate relationships of Berkshire Hathaway and Clayton Homes do not subject them to personal jurisdiction in Arkansas.*

"A corporation is *not* doing business in a state merely by the presence of its wholly owned subsidiary." Epps, 327 F.3d at 649 (quoting Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc., 519 F.2d 634, 637 (8th Cir. 1975)) (emphasis added). A nonresident parent corporation can be subject to personal jurisdiction based on the activities of its in-state subsidiary *only if* "the parent so control[s] and dominate[s] the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." Id. at 648-49. In other words, "a court's assertion of jurisdiction is contingent on the ability of the plaintiff[ ] to pierce the corporate veil." Id. at 649.

Federal courts look to state law to determine whether and how to pierce the corporate veil. Id. In Arkansas, "[i]t is a nearly universal rule that a corporation and its stockholders are separate and distinct entities, even though a stockholder may own the majority of the stock. In special circumstances, the court will disregard the corporate façade when the corporate form has been illegally abused to the injury of a third party." Rhodes v. Veith, 96 S.W.3d 734, 737 (Ark.

7

Ct. App. 2003) (citations omitted). "Piercing the fiction of the corporate entity should be applied with great caution, . . . and the one seeking to pierce the corporate veil and disregard the corporate entity has the burden of proving that the corporate form was abused to his injury." Id. (citations omitted).

In the Epps case, the Eighth Circuit rejected the argument that a nonresident parent corporation should be subjected to personal jurisdiction based only on the fact that its subsidiary did business in Arkansas. The court held that, without more, the parent's "mere ownership" of its subsidiary was "too distant and limited a contact with Arkansas to justify subjecting it to the District Court's exercise of personal jurisdiction." Epps, 327 F.3d at 650. Likewise, here, all we have is "mere ownership" and, even then, the ownership is indirect.

Furthermore, there is absolutely no evidence that either parent company here – whether Berkshire Hathaway or Clayton Homes – "so controls and dominates the affairs" of its indirect subsidiary – whether Clayton Homes or CMH Homes, respectively – that the parent should be deemed the "alter ego" of the subsidiary. To the contrary, the Declarations of Ms. Rieck and Mr. Kalec demonstrate that these corporations operate separately and independently. Moreover, the foregoing declarations indicate that Berkshire Hathaway is not even the direct parent company of Clayton Homes and, similarly, Clayton Homes is not the direct parent company of CMH Homes, Inc. As a result, Berkshire Hathaway cannot be subjected to personal jurisdiction in Arkansas based solely on its relationship with Clayton Homes, and Clayton Homes cannot be subjected to personal jurisdiction in Arkansas based solely on its relationship with CMH Homes. See Epps, 327 F.3d at 650. The claims against Berkshire Hathaway and Clayton Homes should therefore be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

### III. **Plaintiff's Complaint fails to state a claim because Plaintiff is not an "eligible employee" within the meaning of the Family and Medical Leave Act.**

1. *Standard of Review*

Dismissal of a claim pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The complaint should be construed in the light most favorable to the plaintiff and should accept the allegations in the complaint as true. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). "At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations." Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998). Indeed, "conclusory allegations of law and unwarranted inferences" are insufficient to defeat a motion to dismiss for failure to state a claim. Silver v. H&R Block, Inc., 105 F.3d 394 (8th Cir. 1997). Under this standard, Plaintiff's Complaint should be dismissed.

2. *Plaintiff was not employed at a worksite with 50 or more employees within 75 miles.*

Plaintiff's Complaint fails to adequately allege that Plaintiff is an "eligible employee" under the Family and Medical Leave Act ("FMLA"). Although Plaintiff makes the conclusory allegation that he was an "eligible employee" within the meaning of the FMLA, see Orig. Compl. at ¶ 5, these allegations are insufficient to defeat a motion to dismiss. As a result, his Complaint should be dismissed in its entirety.

The FMLA provides *eligible employees* of covered employers up to twelve workweeks of unpaid leave in any twelve-month period for, among other things, caring for an immediate family member who has a serious health condition. See 29 U.S.C. §§ 2612, 2615(a)(2). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any

right provided under [the FMLA]," 29 U.S.C. § 2615, and the Act provides for a private right of enforcement.  See 29 U.S.C. § 2617(a).

The FMLA excludes from the definition of "eligible employee" "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50."  29 U.S.C. § 2611(2)(B)(ii).  The purpose of this exception is to relieve the burden of FMLA compliance on companies with widely dispersed operations, Bellum v. PCE Constructors, Inc., 407 F.3d 734, 739 (5th Cir. 2005), because "Congress . . . recognized that even potentially large employers . . . may have difficulty finding temporary replacements for employees who work at geographically scattered locations."  Harbert v. Healthcare Services Group, Inc., 391 F.3d 1140, 1149 (10th Cir. 2004).

Pursuant to its authority under the Family and Medical Leave Act ("FMLA"), see 29 U.S.C. § 2654, the Department of Labor ("DOL") has promulgated regulations which set forth the eligibility requirements for both employers and employees.  The regulations, following the statutory language, define "eligible employees" and require that the employee "[be] employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite."  29 C.F.R. § 825.110(a)(3).  "Whether 50 employees are employed within 75 miles to ascertain an employee's eligibility for FMLA benefits is determined when the employee gives notice of the need for leave."  29 C.F.R. § 825.110(f).  Further, "[t]he determination of how many employees are employed within 75 miles of the worksite of an employee is based on the number of employees maintained on the payroll."  29 C.F.R. § 825.111(c).

Here, Plaintiff was employed in Fort Smith, Arkansas, by CMH Homes. The only CMH Homes location within 75 miles[2] of Fort Smith is in Lowell, Arkansas. From November 2004 through February 9, 2005, CMH Homes had eight employees on the payroll at its Fort Smith location. During the same time period, CMH Homes had six employees on the payroll at its Lowell location. As a result, CMH Homes had only 14 employees on the payroll within 75 miles of Plaintiff's worksite, which is insufficient under the FMLA. Even if Plaintiff could somehow be deemed an employee of either Berkshire Hathaway or Clayton Homes, neither have any employees within 75 miles of Fort Smith. As a result, Plaintiff is not an eligible employee and, as such, is not entitled to the protections of the FMLA. Dismissal of Plaintiff's Original Complaint is therefore proper pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV. Conclusion

For the reasons stated above, the Court lacks personal jurisdiction over Defendants Berkshire Hathaway Inc. and Clayton Homes, Inc. Consequently, suit cannot be maintained against Berkshire Hathaway or Clayton Homes, and dismissal is proper pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Furthermore, and alternatively, Plaintiff was not an "eligible employee" under the Family and Medical Leave Act, and dismissal is proper pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As such, Defendants Berkshire Hathaway, Clayton Homes, and Eric Dundee respectfully request that the Court dismiss Plaintiff's Original Complaint in its entirety.[3]

---

[2] "The 75-mile distance is measured by surface miles, using surface transportation over public streets, roads, highways and waterways, by the shortest route from the facility where the eligible employee needing leave is employed." 29 C.F.R. § 825.111(b).

[3] To the extent the Court determines that discovery is the proper course of action at this time, Defendants would respectfully request that, at least initially, discovery be limited to the issues raised in this motion.

Respectfully submitted,

/s/ Eva C. Madison
Eva C. Madison (98183)
Littler Mendelson, P.C.
3608 N. Steele Blvd., Suite 214
Fayetteville, Arkansas 72703
Telephone: 479-442-5376
Fax: 479-442-3765
emadison@littler.com

Attorney for Defendants

### CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Jimmie Carl Bush
carlblaw@aol.com

/s/ Eva C. Madison